**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| CHESTER ASHER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  25-cv-00013 |
| | ) | |
| v. | ) | |
| | ) | |
| ST. LOUIS PUBLIC SCHOOL DISTRICT, | ) | |
| THE BOARD OF EDUCATION OF THE CITY | ) | |
| OF ST. LOUIS, and | ) | |
| ANTIONETTE COUSINS, | ) | |
| in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.  Chester Asher is an advocate for improving the quality of education in St. Louis Public Schools. He is the founder of the Coalition with STL Kids, a community-driven organization dedicated to improving educational equity in the St. Louis Public School District.

2.  Mr. Asher frequently attends meetings of the Board of Education of the City of St. Louis and other district events. During the public comment period of Board meetings, he has been a passionate and vocal critic of the St. Louis Public School District's leadership.  His public critiques are part of his broader ongoing advocacy efforts.

3.  As a result of his harsh criticisms, sometimes using language that is apparently viewed as "disrespectful" by members of the Board of Education, Mr. Asher was threatened with bans from access to public Board meetings, threatened with legal action, and eventually banned from attending any events on District property, including Board meetings, for six months.

4.  Mr. Asher brings this lawsuit to seek redress for the violations of his First and Fourteenth Amendment rights caused by the unconstitutional ban, to seek redress for violations of his First

Amendment rights caused by the District and Board's unconstitutional public comment rules, and to seek injunctive relief to prohibit enforcement of those rules.

## JURISDICTION AND VENUE

5.  This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of rights secured by the First and Fourteenth Amendments to the United States Constitution.

6.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all relevant events giving rise to the claims occurred within the City of St. Louis, Missouri.

8.  Divisional venue is proper in this Court because the events serving as the basis for Mr. Asher's claims arose in St. Louis, Missouri, and at least one Defendant resides in St. Louis, Missouri.

## THE PARTIES

9.  Plaintiff Chester Asher is a U.S. citizen.

10. Mr. Asher is an advocate for improving the quality of education for students in the City of St. Louis. Since January 2023, Mr. Asher has regularly attended meetings of the St. Louis Public School Board.

11. Defendant St. Louis Public School District (the "District" or "SLPS") is a Missouri school district that operates public schools within St. Louis, Missouri. The District is a public school system organized and maintained under the laws of the State of Missouri.

12. Defendant Board of Education of the City of St. Louis (the "Board") is the governing body of the District.

13. Defendant Antionette "Toni" Cousins is the President of the Board and serves as the leader of the Board of Education.

14. At all relevant times, the District, Board, and Board President Ms. Cousins, as well as their agents, employees, officers and representatives, have acted under color of state law in enforcing the ban and policies of the Board.

## FACTS

**Policies of the Board of Education**

15. The Board of Education has authority to adopt policies and bylaws pursuant to Missouri law. *See* Board of Education Bylaw No. B9310. The Board may also approve regulations prepared by the superintendent or appropriate administrators. *Id.*

16. Board of Education Policy No. P1160 requires the Board to "attempt to take into account the viewpoints of all segments of the community," engage in "positive leadership and communication skills" at Board meetings, and ensure that the community receives unbiased information about contentious issues that involve the Board.

17. Board of Education Bylaw No. B9200, states that the duties of the Board President include presiding over all Board meetings, "enforc[ing] rules," and signing all letters ordered to be executed by the Board.

18. Board of Education Policy No. P1100 encourages community involvement and "participat[ion] in the decision-making process by commenting on matters of concern to appropriate school officials" and "making presentations to the board."

19. According to Board of Education Bylaw No. B9355, all Board meetings at which "public business is discussed, decided, or public policy [is] formulated" are open to the public unless an authorized exception exists under state law. The bylaw defines "public business" to include "all matters which relate in any way to the performance of the board's function or the conduct of its business."

20. Board of Education Policy No. P1120 states that Board meetings provide a platform for "any citizen to express his or her interest in and concerns for the schools." The policy further states that the public is invited to attend "any and all sessions of the board and raise issues of concern before the meeting begins."

21. Board of Education Bylaw No. B9358.1 states the order of business for public Board meetings and provides that public comments are typically the second order of business following immediately after roll call.  This bylaw also states that the order of business may be modified if the Board President recommends a change that is subsequently approved by a majority of Board members in attendance.

22. According to Board of Education Bylaw No. B9358.3, the Board recognizes the "value of participation by the public in deliberations and decisions on school district matters." The purpose of allowing public participation is to grant community members the "opportunity to express all [their] respective views." The Board encourages public participation at school board meetings on "subjects related to the school district's management."

23. According to Board of Education Bylaw No. B9358.3, during public meetings, the Board will designate a specified period when "citizens may address the school board on any topic, subject to the limitations of the policy."

24. Board of Education Bylaw No. B9358.3 states that individuals who wish to address the Board "must sign in and provide their name, address, phone number, or email address and the subject of their comment." Additionally, "[o]nly those speakers recognized by the chair will be allowed to speak." *Id.*

25. However, Board of Education Bylaw No. B9358.3, prohibits speakers from "identifying school employees and/or students by name, title, and/or location" during the public comment period of Board meetings.

26. Board of Education Bylaw No. B9358.3 further prohibits "[p]ersonal attacks by anyone addressing the school board" and states that "[p]ersistence in such remarks" will result in the termination of the speaker's "privilege to address the school board." The bylaw does not define "personal attacks."

27. The agendas for the meetings of the Board contain additional rules for the public comment period.

28. The additional rules on the agendas state that the Board will "enforce guidelines for Public Comments" including that "[e]ach commenter must remain respectful and **refrain from speaking derogatorily about anyone** (do not use names)." (emphasis in original).

29. Board of Education Bylaw No. B9100 states that the Board of Education shall have "general and supervisory control, government, and management of the public schools and public school property of the district in the city and shall exercise generally all powers in the administration of the public school system therein." This includes the power to make policies for the "government, regulation, and management of . . . school property."

**Mr. Asher's Engagement with SLPS**

30. Since approximately January 2023, Mr. Asher has been engaged in activism relating to the operations of St. Louis Public Schools. He became a regular attendee at Board meetings and engaged in criticism of the District's operations during public comments at those meetings. Mr. Asher has also regularly criticized the District's operations in other contexts, including on social media pages and in interviews.

5

31. On September 12, 2023, Mr. Asher attended and participated in public comment at a Board meeting of the St. Louis Public Schools.

32. Mr. Asher's comments at this meeting were critical of the Board and the District for what Mr. Asher views as their failure to address problems with student learning outcomes.

33. Mr. Asher's comments were as follows:

> Good evening. Again, I would like to request that public comment be moved to the front of the meeting, I think it's disrespectful to have members of the public and parents after a long day wait till the end to speak. And I know that's probably intentional so that, since you have to sign up at the beginning of the meeting you have to wait to the end. And as parents, as community members, I think that is unfair.
>
> You all spoke of Collegiate, of McKinley, and of Metro. These are selective schools. You have to have certain criteria before you are allowed in—whether it's attendance or test scores or a successful interview, these are not open to the general public. What is your plan, because of course the citywide plan was some nonsense, what is your plan for the majority of children in SLPS that cannot read, write and do basic math on grade level? Why is it that someone has to ask? As a school system is that not the number one responsibility—that kids can read?
>
> And if that is not the case, why is that not the number one thing you all discuss? I heard nothing about literacy. Can you imagine, in a school dis—that's like going to an auto mechanic store and hearing nothing about cars. Can you imagine going to a powerplant and hearing nothing about energy? How do we go to a board meeting, to a St. Louis Public School board meeting and hear nothing about reading? If your reading scores were out of this world then I would understand, but you have schools where 1 percent, 5 percent.
>
> I think Compton-Drew, where you had me, you all had the audacity to bring the Secretary of Education to a city and bring them to a school where 85 percent of the kids can't read on grade level. Did you all tell him that? Where 95 percent of the kids aren't on grade level for math. Did you all tell him that? You know, we're happy and showing him around. And are you kidding? Are you out of your mind?
>
> And the fact that you all are not as outraged as me is outraging! And I think if this was a white district with white kids who were being disserviced in this way, you would have a lot more urgency, you would have a lot more fire. I would be the quietest person in this room. But no, we have poor black kids. So, we come to the board of education and hear nothing, not a godddamn thing about education and literacy and reading for our children. Stop it.

6

34. Mr. Asher at times spoke passionately in delivering his remarks, but he completed his remarks within the allotted time for speakers and from the podium designated for speakers. His remarks were not disruptive, nor did Mr. Asher disrupt the meeting in any other way.

35. Following that meeting, Mr. Asher received a letter, dated September 18, 2023, on Board letterhead and signed by Ms. Cousins. The letter stated that the Board did not "condone [Mr. Asher's] manner of delivery, and certainly not [his] use of profanity" during the September 12, 2023 Board meeting.

36. Although Mr. Asher did not disrupt the September 12, 2023 meeting, the letter warned Mr. Asher that the Board "will not tolerate any further disrespectful and/or disruptive behavior in Board meetings, including, but not limited to, profanity, intimidating conduct toward Board members or SLPS employees, and/or specifically naming individual Board members or SLPS employees or, referring to them in a derogatory manner."

37. Such actions, the letter stated, "will have consequences. Specifically, any of these behaviors or other affronts will result in your immediate removal from the meeting and/or temporary suspension of your right to speak publicly at future Board meetings for a period of time to be determined based on the severity of the conduct."

38. Prior to the next Board meeting, which was scheduled for October 10, 2023, Mr. Asher distributed fliers encouraging community members to attend the meeting.

39. The fliers contained an image of a siren and the word "Emergency" at the top. The fliers referred to the "SLPS Board Meeting." They cited the information that Mr. Asher believed constituted an emergency: "Did you Know? Only 12 percent of our kids are able to read. 300 parents needed to cut the school-to-prison pipeline!"

40. The fliers encouraged parents to "COME OUT & LET YOUR VOICES BE HEARD! DEMAND Free Tutoring! DEMAND Personalized Reading Plans!"

41. The fliers provided information about the time, date, and location of the upcoming Board meeting and stated: "Bring your kids, we'll provide food." They also provided Mr. Asher's contact information, including a personal email address that used Mr. Asher's first and last names.

42. Mr. Asher received a letter dated October 4, 2023, on Board letterhead and signed by the District's Chief Legal Counsel, Jayme Major, on behalf of the Board and District. The letter accused Mr. Asher of "misrepresent[ing] himself" and "mischaracterizing" a regular meeting of the Board as an "emergency" meeting.

43. The letter claimed that the "demands" on the fliers demonstrated a "fundamental misunderstanding of the services that are already being provided at SLPS" and stated: "Continued misrepresentations of fact will be considered intentional, and the District will take any and all appropriate legal action to prevent continued publication of such mischaracterizations."

44. The letter also stated that Mr. Asher could not bring food into the District's facility or serve food on its property.

45. According to the October 4, 2023 letter, the District and Board demanded that Mr. Asher edit the flier to "clarify [his] position . . . as unaffiliated with the Board," "[r]eorganize [his] plans for feeding attendees such that no food will be served on SLPS property," remove what the letter characterized as "misinformation suggesting the District's lack of tutoring or individualized reading plans," and redistribute a corrected flier at least five days before the October 10 meeting.

46. The letter stated that failure to comply with these demands may result in a restriction of "your group's attendance" at the meeting.

47. The October 4, 2023 letter from legal counsel also referred to Mr. Asher's comments at the September meeting and stated: "The manner in which you conducted yourself at the Board meeting and your use of profanity was highly inappropriate and unprofessional. We will not tolerate any further disrespectful and/or disruptive behavior in Board meetings. Specifically, any of these behaviors or affronts will result in your immediate removal from the meeting and/or temporary suspension of your right to speak publicly at future Board meetings for a period of time to be determined based upon the severity of the conduct."

48. Mr. Asher complied with the District and Board's demands regarding the flier.

49. On October 10, 2023, Mr. Asher attended the Board's regular monthly meeting.

50. At prior meetings, the Board's regular practice had been to permit individuals who had signed up for public comment to speak in the order in which they had signed up.

51. Although Mr. Asher was among the first to sign up to speak during the public comment period, Mr. Asher was denied an opportunity to speak during this meeting.

52. Bill Monroe, who had been the first to sign up to speak, was also denied an opportunity to speak at this meeting.

53. Another attendee, who stated she was number 10 on the signup list, was also denied the opportunity to speak.

54. Instead of following the usual procedure and permitting individuals to speak in the order in which they signed up, Ms. Cousins selectively chose ten speakers from the signup list.

55. Ms. Cousins informed attendees that speakers were prohibited from "speaking derogator[ily] about anyone," using names, or using profanity.

56. Many of the ten selected speakers were particularly complimentary towards the Board.

9

57. Three speakers complimented then-superintendent Keisha Scarlett using her name. One speaker stated she "respect[s] this democratically elected school Board of their choice of Dr. Scarlett to lead this District." Another speaker stated, "We have a new dynamic young Black female leader [in] Dr. Scarlett." A third speaker stated, "We support you Dr. Scarlett. We support you Madam President and Vice President, and we support St. Louis." None of these speakers was admonished for violating the stated prohibition on using names.

58. By selecting particular speakers, rather than going in signup order, the Board silenced critical voices and disfavored viewpoints.

59. After approximately 35 minutes, Ms. Cousins ended the public comment period. Multiple attendees expressed frustration regarding who the Board had allowed to speak.

60. Vice Chair Mike Davis interjected, "to make a motion to adjourn." Ms. Cousins' seconded the motion. The Board abruptly voted to adjourn the meeting and dismissed the attendees, many or all of whom left the building.

61. After an unknown amount of time that same evening—and without notification to the earlier attendees—the Board reconvened. Ms. Cousins stated that the Board was "going back into open session." After conducting business for approximately an hour and a half, Ms. Cousins asked Mr. Davis if he wanted to make a "correction" on his earlier motion. Mr. Davis stated that his previous motion was meant to be a motion to "recess," not to "adjourn," and asked "without objection" that the minutes reflect a motion to recess.

62. The Board's published minutes state that Mr. Davis "moved to go into recess" and that the motion passed, rather than stating accurately what occurred, which is that Mr. Davis moved to adjourn and the Board approved that motion.

10

63. On March 27, 2024, Mr. Asher attended an event called "The Real Truth About Charter Schools," which was sponsored by Save SLPS, a group of individuals and organizations opposed to the use of public funding for charter schools. The event was held on SLPS property but was not affiliated with or sponsored by the District or Board, though several Board members, including Ms. Cousins, were in attendance.

64. The event included a film followed by a panel of guests from New Orleans and Chicago who spoke about what they viewed as the impact of charter school expansion in their communities. The panelists were asked questions by an on-stage moderator.

65. Near the end of the event, Mr. Asher attempted to speak from the audience to distinguish between the panelists' experiences in other cities and the circumstances in St. Louis. One of the panelists asked Mr. Asher if he could respond, and then began responding to Mr. Asher's comments.

66. Mr. Asher and the panelist briefly engaged in a back-and-forth as an SLPS safety officer approached Mr. Asher to escort him out. The panelist asked to respond to Mr. Asher before Mr. Asher left. Mr. Asher and the panelist spoke over each other, and Mr. Asher was asked to leave and escorted out by the officer.

67. On March 30, 2024, the Board's outside counsel, acting on behalf of the Board and District, sent Mr. Asher a letter with the subject line "No Trespass Order Through September 30, 2024." The letter banned Mr. Asher from all District property and events for six months, including any meetings held by the District or its Board.

68. The letter stated that the order followed "multiple written warnings" to Mr. Asher regarding his alleged "disruptive and disrespectful behavior at Board meetings and other District events."

69. The letter referenced Mr. Asher's attendance at the March 27, 2024 event. The letter incorrectly stated that Mr. Asher had "physically resisted the officer's assistance" and incorrectly accused Mr. Asher of "hurling racial insults" at a Board member.

70. The letter further stated that the District would "strictly enforce this order in cooperation with the Metropolitan St. Louis Police Department."

71. The letter did not provide Mr. Asher with any opportunity to appeal or challenge the no trespass order. Nor did the letter provide Mr. Asher with any alternative means of engaging in public comment at Board meetings.

72. Mr. Asher complied with the no trespass order and did not attend any Board meetings or events hosted on District property while it was in effect. The order prevented Mr. Asher from attending and participating in public comment at Board meetings, as he would have done but for the order.

**COUNT I – The No Trespass Order Was an Impermissible Restriction**
**on Speech in a Public Forum**
**Violation of the First Amendment to the U.S. Constitution Against the Board and District**
**(42 U.S.C. § 1983)**

73. Mr. Asher repeats the allegations set forth above as if fully set forth herein.

74. The First Amendment to the U.S. Constitution prohibits the abridgment and chilling of free speech.

75. The First Amendment is applicable to the states through the Fourteenth Amendment.

76. Speech critical of the government and its officials, including Mr. Asher's speech at Board meetings criticizing the Board, the District, and District employees, is protected speech under the First Amendment.

77. Persons violating the First Amendment under color of state law are liable at law and in equity under 42 U.S.C. § 1983.

78. The public comment period of the open public meetings of the Board of Education constitutes at least a limited public forum.

79. Because the public comment period of the open public meetings of the Board of Education are, at the least, limited public forums, Defendants cannot unreasonably exclude individuals from those meetings, nor may they exclude individuals based on viewpoint.

80. Mr. Asher engaged in constitutionally protected speech when he attended open public meetings of the Board of Education to voice his opinions and express disagreement with Defendants' policies and actions.

81. Mr. Asher was prevented, chilled, and inhibited from engaging in constitutionally protected First Amendment activity as a result of the no trespass order, because the no trespass order prevented him from attending and speaking at open public meetings of the Board of Education.

82. Defendants, by banning Mr. Asher from these meetings from March 30, 2024, to September 30, 2024, violated Mr. Asher's free-speech rights under the First Amendment because the no trespass order unlawfully restrained Mr. Asher's speech and participation in a public forum on matters of public interest and concern.

83. Restrictions on speech in limited public forums must be both reasonable in light of the forum's purpose and viewpoint neutral. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

84. Mr. Asher's ban was unreasonable in light of the purpose of the public comment period of the Board's meetings, which is to provide community members the opportunity to express their views on subjects related to the District's management.

85. Mr. Asher has not engaged in any behavior that interfered with the Board or District's ability to provide an opportunity for community members to express their views on subjects related

13

to the District's management or to conduct its business at its public Board meetings. Mr. Asher has not engaged in disruptive behavior at any Board meeting.

86. Mr. Asher's ban from Board meetings was also viewpoint discriminatory because the District and Board's characterization of his September 12, 2023 comments that were part of the basis for the ban as "disruptive" is not based on any actual disruption to the Board meeting but is instead based on the disfavored viewpoints that Mr. Asher expressed. The ban was also viewpoint discriminatory as it was based in part on comments alleged to be "disrespectful."

87. Due to the six-month no trespass order, Mr. Asher was forced to alter his constitutionally protected activities, including participating in the public comment period of Board meetings, to avoid further adverse actions from the District.

88. The no trespass order was issued pursuant to the Board and District's policies, including the unconstitutional policy of prohibiting "disrespectful" speech.

89. The unconstitutional no trespass order was issued by the District and Board pursuant to the Board's final policymaking authority over District property or pursuant to the authority of a final policymaker who had been delegated such authority by the BoardS.

**COUNT II – The No Trespass Order Violated Due Process by Depriving Mr. Asher of His Liberty Interest in Participating in Public Forums on District Property Without an Opportunity to Be Heard**
**(Notice and Opportunity to Be Heard)**
**Violation of the Due Process Clause of the Fourteenth Amendment to the**
**U.S. Constitution Against the District and Board**
**(42 U.S.C. § 1983)**

90. Mr. Asher repeats the allegations set forth above as if fully set forth herein.

91. Government entities and officials, including the District and Board, cannot deprive an individual of a property or liberty interest without due process of law.

14

92. Under the Due Process Clause, procedural due process requires both notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

93. Mr. Asher has a strong First Amendment liberty interest in access to the public comment period of open public meetings of the Board of Education, which are at least limited public forums.

94. The no trespass order did not set out a process for contesting Mr. Asher's ban, and Mr. Asher did not have any opportunity to contest the ban.

95. Any interest Defendants had in instituting and enforcing the no trespass order did not justify depriving Mr. Asher of an opportunity to be heard or challenge the ban.

96. The no trespass order was issued by the District and Board pursuant to their unconstitutional policy of banning individuals from public forums on school property without providing for a right to appeal the ban. The Board and District directed the issuance of the no trespass order and had final policymaking authority to issue the unconstitutional no trespass order against Mr. Asher.

97. Because the District and Board's policy and issuance of the no trespass order deprived Mr. Asher of any opportunity to be heard in connection with his ban from public forums on District property, the no trespass order did not afford sufficient process prior to the deprivation of Mr. Asher's liberty interest in participating in public forums on District property, including open public meetings of the Board.

98. Mr. Asher intends to continue to speak at Board meetings and to speak about Defendants and their policies. Based on the past communications from the Board and District and the past no trespass order, Mr. Asher is concerned that Defendants will enforce their policies against him in the future to deprive him of access to Board meetings without an opportunity to be heard.

99. Mr. Asher's right to expression is objectively chilled by the Board's policy.

15

100.     Declaratory and injunctive relief is required to protect Mr. Asher's rights under the Due Process Clause.

**COUNT III – The Prohibitions on Disrespectful Language, "Personal Attacks," and "Speaking Derogatorily About Anyone" Are Unconstitutional Viewpoint-Based Restrictions on Speech in a Limited Public Forum**
**Violation of the First Amendment to the U.S. Constitution Against All Defendants**
**(42 U.S.C. § 1983)**

101.     Mr. Asher repeats the allegations set forth above as if fully set forth herein.

102.     The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Speech may not be censored because it is critical of government officials, employees, or policies, even if such criticisms are expressed in ways that are unpleasant or offensive.

103.     Restrictions on speech in limited public forums must be both reasonable in light of the forum's purpose and viewpoint neutral. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

104.     The Board's public comment rules requiring that speakers remain "respectful" and refrain from "speaking derogatorily about anyone" and Board of Education Bylaw No. B9358.3's requirement prohibiting "personal attacks" are viewpoint discriminatory restrictions on speech and are unconstitutional on their face.

105.     By enforcing these unconstitutional, viewpoint discriminatory policies against Mr. Asher, Defendants have deprived him of his right to free speech in violation of his clearly established rights under the First Amendment, as incorporated through the Fourteenth Amendment.

106.     Mr. Asher intends to continue to speak at Board meetings and to speak about Defendants and their policies. Based on Defendants' past enforcement of their policies, including their past communications to Mr. Asher and the no trespass order, Mr. Asher reasonably fears that Defendants will enforce the public comment policies against him in the future to prevent him from engaging in sharp criticism of the Board and District and to prevent him from engaging in any criticism at all of specific individuals who hold elected office, leadership positions, or other positions within the Board or District when he speaks during the public comment period.

107.     Mr. Asher's right to expression has been and continues to be objectively chilled by the Board and District's policy.

108.     Based on the past enforcement of these policies against him, Mr. Asher faces a credible threat that these policies will be enforced against him in the future to prevent him from speaking as he desires during the public comment period or to ban him from access to future meetings if he does so.

109.     Declaratory and injunctive relief is required to protect Mr. Asher's First Amendment rights.

**COUNT IV – The Requirement That Speakers Remain "Respectful"
Is Unconstitutionally Vague.
Violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution
Against All Defendants
(42 U.S.C. § 1983)**

110.     Mr. Asher repeats the allegations set forth above as if fully set forth herein.

111.     A government policy is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment if it fails to provide the kind of notice that will enable a person of ordinary intelligence a reasonable opportunity to know what is prohibited.

112.    The public comment rules on the Board's agendas require that commenters remain "respectful."

113.    Defendants' September 18, 2023 and October 4, 2023 letters accused Mr. Asher of engaging in "disrespectful" behavior and threatened that such behavior could, in the future, subject him to removal from Board meetings or suspension from the ability to comment at and/or attend meetings.

114.    The no trespass order also cited Mr. Asher's alleged "disrespectful" behavior at prior Board meetings as a basis for the no trespass order.

115.    Defendants do not have any other policies or documents relating to or reflecting what constitutes "respectful" speech or behavior.

116.    Mr. Asher's due process rights were violated by Defendants' enforcement of the respectfulness requirement against him because it fails to provide a person of ordinary intelligence a reasonable opportunity to understand what speech or conduct is prohibited and because it encourages arbitrary and discriminatory enforcement.

117.    Mr. Asher intends to continue to speak at Board meetings in a passionate manner and to harshly criticize the Board and District when he believes such criticism is merited.

118.    Based on the past communications from Defendants and the no trespass order, Mr. Asher reasonably fears that Defendants will enforce the respectfulness requirement against him again in the future to deny him the ability to speak during public comment periods at Board meetings or to deprive him of access to Board meetings.

119.    Mr. Asher is not able to speak in the way he wishes to during public comment periods because he is not able to understand what manner of speaking or what content of his comments may run afoul of the respectfulness requirement.

120.    Declaratory and injunctive relief preventing enforcement of the respectfulness policy is required to protect Mr. Asher's rights under the Due Process Clause.

### COUNT V – The Profanity Ban Is an Unreasonable Restriction on Speech in a Limited Public Forum
**Violation of the First Amendment to the U.S. Constitution Against All Defendants**
**(42 U.S.C. § 1983)**

121.    Mr. Asher repeats the allegations set forth above as if fully set forth herein.

122.    Because the public comment period of the open public meetings of the Board of Education are, at the least, limited public forums, restrictions on the public comment period must be viewpoint neutral and reasonable in light of the purpose of the forum, which is to provide community members the opportunity to express their views on subjects related to the District's management.

123.    Profane remarks in the context of political expression are generally protected. This is also true when profanity is used in the context of public comments during a school board meeting. *See Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338 (N.D. Ga. 2022) ("[P]rofanity as political expression when communicated in a courthouse is protected speech … A school board meeting is much more analogous to a courthouse than it is to a school full of minors, from a First Amendment perspective.")

124.    Defendants' blanket prohibition on the use of profanity—as articulated in their communications to Mr. Asher and in Ms. Cousins' explanation of the public comment rules before the October 2023 Board meeting—is an unreasonable regulation of speech in a limited public forum. The use of profanity as part of protected political expression relating to the operation of the District does not interfere with the Board's purpose to provide community members the opportunity to express their views on subjects related to the District's management. Expression relating to the District's management is political expression that "should be uninhibited, robust,

and wide-open," which "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *See Sullivan*, 376 U.S. at 270.

125.    Mr. Asher has been harmed by Defendants' enforcement of their blanket prohibition on the use of profanity as his use of profanity at the September 2023 meeting was part of the prior, allegedly "disrespectful" behavior that was cited as support for the six-month ban.

126.    Mr. Asher intends to continue to speak at Board meetings in a passionate manner and to harshly criticize the Board and District when he believes such criticism is merited.

127.    Based on the past communications from Defendants and the no trespass order, Mr. Asher is concerned that if he engages in the use of profanity to support his political points during public comment period, Defendants will enforce their blanket profanity prohibition against him again in the future to deny him the ability to speak during public comment periods at Board meetings or to deprive him of access to Board meetings.

128.    Mr. Asher's speech has been and continues to be chilled by Defendants' unconstitutional blanket prohibition on the use of profanity during the public comment period.

129.    Declaratory and injunctive relief preventing enforcement of the profanity ban is required to protect Mr. Asher's First Amendment rights.

**COUNT VI – The Prohibition on Using Individuals' Names Is an Unreasonable Restriction on Speech in a Limited Public Forum and Has Also Been Applied in a Viewpoint Discriminatory Manner**
**Violation of the First Amendment to the U.S. Constitution Against All Defendants**
**(42 U.S.C. § 1983)**

130.    Mr. Asher repeats the allegations set forth above as if fully set forth herein.

131.    Because the public comment period of the open public meetings of the Board of Education are, at the least, limited public forums, restrictions on the public comment period must viewpoint neutral and be reasonable in light of the purpose of the forum, which is to provide

20

community members the opportunity to express their views on subjects related to the District's management.

132.     Defendants' policies, however, unconstitutionally prohibit speakers from expressing their views on subjects related to the District's management using the name, title, or even the location of any District employee and also prohibit speakers from naming the elected Board members who are responsible for the District's management in their comments.

133.     A substantial number of applications of Defendants' policies prohibiting the use of employees' names, titles, or locations and prohibiting the use of names of Board members are unconstitutional relative to any legitimate sweep. Speech about public officials is at the core of First Amendment protection, yet Defendants prohibit the use of all employee names, titles, or locations and all Board member names regardless of the purposes. The names of SLPS administration and employees are public information under the Missouri Sunshine Law, and Board members are elected officials.

134.     Not only are these policies unreasonable in their blanket prohibitions on the use of names, titles, or locations of District employees or the names of Board members, they have also been enforced in a viewpoint discriminatory manner. Ms. Cousins, who enforces the policies during meetings, warns speakers not to use any individuals' names at all, but then permits the use of employees' names when speakers' remarks are complimentary to the employees.

135.     Mr. Asher would like to use certain individuals' names, including the names of Board members and District leaders, when necessary to explain his comments and issues relating to the District. However, Mr. Asher engages in self-censorship by not using individuals' names where he otherwise would because he reasonably fears, based on Defendants' policies and past

communications to him, that the use of individual names in violation of Defendants' policies would result in the denial of his ability to speak at or attend public Board meetings.

136.    Mr. Asher is under a credible threat he may be restricted from attending or speaking at Board meetings if he does use names.

137.    Mr. Asher's speech has been and continues to be chilled by Defendants' unconstitutional blanket prohibition on the use employee names, titles, or locations and the use of Board member names.

138.    Mr. Asher is also injured by the viewpoint discriminatory enforcement of the policy, as he must censor his comments while those who are complimentary of District employees or Board members need not do so.

139.    Declaratory and injunctive relief preventing enforcement of the prohibition on using individuals' names is required to protect Mr. Asher's First Amendment rights.

## **PRAYER FOR RELIEF**

140.    WHEREFORE, in light of the foregoing, Mr. Asher respectfully this Court:

a.  Enter judgment in Mr. Asher's favor on Counts I-VI;

b.  Enter a judgment declaring that Defendants' unconstitutional policy of banning individuals from open, public Board meetings without providing them with an opportunity to contest the ban violates Due Process and enjoining Defendants from enforcing such policy;

c.  Enter a judgment declaring that Defendants' prohibitions on disrespectful language, personal attacks, and derogatory speech are unconstitutional viewpoint discriminatory restrictions on speech in violation of the First Amendment and enjoining Defendants from enforcing such prohibitions;

22

d. Enter a judgment declaring that Defendants' requirement that public commenters remain "respectful" is unconstitutionally vague and enjoining Defendants from enforcing such requirement;

e. Enter a judgment declaring that Defendants' blanket prohibition on profanity during public comments is an unreasonable restriction on speech in a public forum in violation of the First Amendment and enjoining Defendants from enforcing the blanket prohibition;

f. Enter a judgment declaring that Defendants' prohibitions on using the names, titles, or locations of employees and on using the names of Board members: (1) is an unreasonable restriction on speech in a limited public forum in violation of the First Amendment and (2) is enforced in a viewpoint discriminatory manner in violation of the First Amendment, and enjoining Defendants' from enforcing the blanket prohibition on the use of names, titles, or locations of employees and on using the names of Board members;

g. Award Plaintiff nominal damages on all counts;

h. Award Plaintiff costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

i. Grant such other relief as the Court deems just and proper.

Dated: January 6, 2025

Respectfully submitted,

/s/  Lisa S. Hoppenjans

Lisa S. Hoppenjans, #63890 (MO)
Benjamin J. Wilson, #63329 (MO)
Tylah Gantt (motion for authorization of law
  student practice pending)
Avrye King (motion for authorization of law
  student practice pending)
Cassidy Mandelbaum (motion for authorization of
  law student practice pending)
First Amendment Clinic
Washington University in St. Louis School of Law
One Brookings Drive
St. Louis, MO 63130
Phone: (314) 935-8980
lhoppenjans@wustl.edu
benwilson@wustl.edu

**ATTORNEYS FOR PLAINTIFF**

24